UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| LOUIS NEAL ZEIGENBEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23CV38 RHH |
| | ) | |
| LAUREL RAINES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

Self-represented Plaintiff Louis Zeigenbein brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF No. 2. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $108.67. *See* 28 U.S.C. § 1915(b)(1). As Plaintiff is now proceeding *in forma pauperis*, the Court must review his complaint under 28 U.S.C. § 1915. Based on such review, the Court will dismiss this action for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is a prisoner at Moberly Correctional Center ("MCC"). ECF No. 1 at 2. In support of his motion to proceed without prepaying fees and costs (ECF No. 2), Plaintiff submitted an inmate account statement showing average monthly deposits of $543.33 over a six-month period. ECF No. 4. The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $108.67, which is twenty percent of Plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**Plaintiff's Pleadings**

**I.   The Complaint**

Plaintiff is a convicted and sentenced state prisoner at MCC, a Missouri Department of Corrections ("MDOC") facility in Moberly, Missouri.  ECF No. 1 at 2.  He brings this 42 U.S.C. § 1983 action, alleging violations of his civil rights against four defendants associated with MCC: (1) Laurel Raines (Medical Director for Centurion Health Care, Inc.); (2) Myles Strid (MCC warden); (3) Anne Precythe (MDOC Director); and (4) Centurion Health Care, Inc.[1]  *Id.* at 1-3.  Plaintiff names all four defendants in both their individual and official capacities.  *Id.*

Plaintiff asserts that defendants violated his Eighth and Fourteenth Amendment rights based on an alleged lack of proper medical care and treatment.  *Id.* at 4-6.  Plaintiff states that he "was cleared of a stroke approximately 5 times" between August 2022 and January 2023.  *Id.* at 4.  In September 2022, Plaintiff was taken to a hospital because he was "[n]ot getting blood to [his] brain per the Doctor."  *Id.* at 5.  In January 2023, he had an "incomplete" stress test and in March

---

[1] As of November 15, 2021, Centurion Health is the contracted health care provider for incarcerated people at MDOC institutions statewide.  *See* Centurion Health News, https://www.centurionmanagedcare.com/newsroom/centurion-health-begin-correctional-health-contract-for-missouri-department-of-corrections.html (last visited 10/23/23).

2023, his Flat Table Nuclear Test showed normal results. In May 2023, he had a Tilt Table EKG and was diagnosed with dehydration. *Id.* Plaintiff "spoke to the Cardiologist about [his] symptoms before the Nuclear Test, and [the Cardiologist] suggested that [he] needed a Tilt Table Nuclear Test, not a flat table." *Id.* at 8. Plaintiff complains that his EKG, blood pressure, and "heart beat" readings were all done when he was lying down. He describes the results of these tests as "very low" or "very high." *Id.*

At some point in time, Plaintiff chose to stop taking the medications prescribed to him due to the following reasons:

> 1) lack of communication amongst staff, 2) 2 medications cause dizziness, 3) ALL test are normal, 4) water pill and stool softener can cause dehydration (I took as needed), 5) does not known what is causing my symptoms, 6) guessing as to what treatment/testing needed, 7) stress test paperwork from the institution shows a stroke, 8) Tilt Table EKG paperwork from the institution shows d[e]hydration, 9) Negligence, 10) Malpractice.

*Id.*

Specifically, as to defendant Raines – who is described as both a nurse practitioner over the MCC cardiovascular and chronic care pain clinic and the medical director of Centurion – Plaintiff alleges that she violated his due process, acted with deliberate indifference to his serious medical need, acted with negligence, and committed medical malpractice. *Id.* at 4. According to Plaintiff, Raines fired, quit, or walked out four times since he arrived at MCC. *Id.* at 5.

As to defendant Strid, Plaintiff states that as warden, Strid is fully aware of the medical needs of all inmates; he is responsible for inmates' well-being; and due to his lack of ability to address inmates' chronic care needs, "inmates are forced to suffer in silence." Plaintiff asserts that Strid acted with negligence by not responding to his serious medical need. *Id.*

As to MDOC Director Precythe, Plaintiff blames her for MDOC's contract with Centurion, which he describes as a company that does "not have the best interest at heart." Plaintiff further alleges that Precythe is not overseeing Centurion to "ensure that they are providing the care that

- 4 -

Centurion is contracted for." *Id.* Finally, Plaintiff complains that Precythe does not "engage with inmates" and this makes her disconnected from their medical needs. *Id.* at 6.

As to correctional healthcare provider Centurion, Plaintiff alleges that "[w]hen medical needs/issues arise or [are] discovered[,] they drag their feet when it comes to establishing a medical plan." Furthermore, Plaintiff asserts that Centurion prolongs inmates' receipt of medical treatment due to "[p]rotocols" and "lack of communication." Finally, Plaintiff argues that MDOC inmates do not get quality health care because there is no medical doctor onsite, just a nurse practitioner. *Id.*

In the 'Injuries' section of his complaint, Plaintiff states that he has the following health problems: chest pressure; a dull ache to sharp pain in the "left side of [his] heart;" a "flutter" in his entire body; numbness in his face and head; pressure "not dizziness" on the sides of his head; shortness of breath with walking; and increased difficulty breathing when climbing stairs or carrying items. *Id.* at 7-8. These problems occur when Plaintiff stands and exerts himself, usually stopping when he sits or lays down. However, "as the day goes on," the symptoms increase regardless of activity. *Id.* According to Plaintiff, he has informed "ALL Medical Personnel" of these symptoms. *Id.* at 8.

For relief, Plaintiff seeks money damages and to "be seen by a Licensed Cardiologist who has the knowledge and training to address [his] serious medical need." *Id.* at 9.

## II. Exhibits to the Complaint

Plaintiff attached to his complaint a document titled "Details Surrounding Reasons for Civil Complaint."[2] ECF No. 1-5. The document contains forty-four (44) pages of Plaintiff's

---

[2] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

handwritten notes on "Tele-Medicine, Nurse Practitioner(s) appointments, Out Count (hospital), sick call, and Nurse call outs" from approximately August 15, 2022 to July 5, 2023. *Id.* at 1, 46. Plaintiff alleges that as of July 5, 2023, he has "'NOT' seen a medical provider for [his] symptoms" but the document indicates otherwise. *Id.* at 45. Plaintiff had regular visits with nurses and nurse practitioners where his symptoms were discussed, his blood pressure was taken, his heart listened to, and his medications were adjusted. On many occasions, Plaintiff self-declared to medical and EKGs were performed. Other tests Plaintiff had during this period include a cat scan, heart ultrasound, MRI, stress test, Nuclear Test on a flat table, and an EKG Tilt Table test. Plaintiff was sent to a local hospital for emergency treatment and testing multiple times. *Id.* at 2-45.

Plaintiff complains that he still suffers from the same symptoms that he complained to medical about in mid-August 2022, and that the medical staff should have determined what is causing his problems by now. Most of the test results have been normal but during this period the tests have determined that Plaintiff's problems are not related to a stroke. Also, adjustments to medication have gotten Plaintiff's blood pressure under control. Although Plaintiff states that he has not seen a doctor in almost a year, he has had numerous tele-medicine visits with doctors, he has been seen by doctors at the local hospital, and tests have been performed on him by doctors during this period. *Id.*

Plaintiff also attached institutional grievance documents to his complaint, which started with an Informal Resolution Request dated Sept 16, 2022, requesting further evaluation by a cardiologist. ECF No. 1-6.

**III.     First Supplement to the Complaint**

On August 25, 2023, Plaintiff filed a supplement with the Court. ECF No. 6. This supplement appears to be a continuation of Plaintiff's handwritten notes on the medical treatment he received from July 5th to August 20th, 2023. *Id.* at 1-6. Plaintiff had a tele-medicine call with

a doctor in early July who told him that he had an irregular heartbeat and that he had been approved for a heart monitor. *Id.* at 1. In mid-July, Plaintiff wore the heart monitor for a 72-hour period. *Id.* at 3. Plaintiff includes various notes on multiple visits with medical personnel at MCC including medication refills, routine medical tests, and multiple EKG tests. *Id.* at 3-6.

At some time in August, it appears that a non-defendant doctor – who Plaintiff previously sued – began working on a temporary basis at MCC. *Id.* at 3. Plaintiff has refused to see that doctor and it is unclear from the notes how much of Plaintiff's medical care at MCC has been affected by this refusal. *Id.* at 3-6. Finally, Plaintiff included a "Witness Statement" which appears to have been written by an employee "office porter" at MCC and discusses how it is common for defendant Raines to not "show up," resulting in inmates not being seen in medical. ECF No. 6-2 at 1.

**IV.  Second Supplement to the Complaint**

On September 7, 2023, Plaintiff filed additional handwritten notes with the Court. ECF No. 7. Plaintiff complains that the same non-defendant doctor who he sued in 2019 for taking him off the medication Gabapentin,[3] is again trying to take him off this medication. *Id.* at 1. According to Plaintiff, he "won" his lawsuit against this doctor; however, a review of the court record indicates that the case was settled.[4] *Id.* at 3. Further medical notes from Plaintiff provide details on subsequent medical visits with various medical personnel at MCC, and there "was no mention" of discontinuing Gabapentin. *Id.* at 4. Finally, the results of the heart monitor tests appear to indicate that Plaintiff does not have a cardiac problem. *Id.* at 3.

---

[3] Gabapentin is a medicine used to treat partial seizures, nerve pain from shingles, and restless leg syndrome. *See* Drugs.com: Gabapentin, https://www.drugs.com/gabapentin.html (last visited 10/23/23).

[4] *See Zeigenbein v. Howell*, No. 4:17-cv-2749-AGF, ECF Nos. 86, 90 (E.D. Mo. filed Nov. 17, 2017) (notice of settlement as to Defendant Dr. Stamps filed Jan. 9, 2020, and case dismissed with prejudice as to Defendant Dr. Stamps on Feb. 26, 2020).

**Discussion**

After careful review and liberal construction of Plaintiff's pleadings, the Court finds that Plaintiff fails to state a claim upon which relief may be granted. The Court is sympathetic to Plaintiff's frustration that he is suffering medical problems for which a source has not been determined. However, the pleadings before the Court do not indicate that any named defendant knew of Plaintiff's medical needs and intentionally disregarded them. Instead, the pleadings indicate the opposite. Plaintiff has been frequently examined by medical personnel and undergone extensive medical testing. Although Plaintiff has a constitutional right to medical care, he does not have a right to dictate exactly which medical professionals he is seen by. Plaintiff's allegations fail to state a claim of deliberately indifferent medical care under the Eighth Amendment. Furthermore, to the extent Plaintiff attempts to also bring a substantive due process claims under the Fourteenth Amendment, these claims also fail. Finally, Plaintiff's official capacity claims against the State of Missouri defendants are not viable under § 1983 and Plaintiff fails to allege a constitutional violation based on a custom, policy, or failure to train by defendant Centurion. For all of these reasons, this case will be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B).

**I.     Individual Capacity Claims**

    **a.  Eighth Amendment**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he suffered from an

objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).  A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent."  *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted).  An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."  *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted).

Here, Plaintiff's lengthy account of his numerous interactions with medical personnel at MCC and other institutions over an approximate one-year period, indicates that he has received extensive medical care and treatment.  *See* ECF Nos. 1-5 at 2-45, 6 at 1-6, & 7 at 3-4.  Plaintiff was seen by MCC medical staff many times over this time period.  He was sent to a local hospital for care multiple times.  He also saw doctors over telemedicine and for medical testing.  Plaintiff had cat scans, ultrasounds, MRIs, EKGs, a chest x-ray, a stress test, a Nuclear Test on a flat table, an IV line, and a Tilt Table test, and he wore a heart monitor for three days.  He also had multiple changes to his prescribed medications and he saw multiple medical specialists.  *Id.*  Through all this medical care, Plaintiff was able to get his blood pressure under control and medical tests have ruled out stroke, heart attack, or atrial fibrillation as Plaintiff's problem.  ECF No. 1-5 at 26 & 29. Plaintiff complains that it takes too long for medical tests to be approved, scheduled, and to occur. However, "[t]he Constitution does not require jailers to handle every medical complaint as quickly

as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009).

In addition, mere negligence or inadvertence does not rise to the level of deliberate indifference. *Jackson*, 756 F.3d at 1066; *see also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (stating that medical malpractice is not actionable under the Eighth Amendment); *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) ("Negligent misdiagnosis does not create a cognizable claim under § 1983"). As such, Plaintiff's allegations of negligence and malpractice against defendants do not state a violation of the Eighth Amendment.

Furthermore, the fact that Plaintiff often disagrees with MCC medical personnel on the appropriate course of treatment, is also not enough to state a claim of deliberate indifference. Plaintiff has no right to specific medical care or treatment. A prisoner's "mere disagreement with treatment decisions" does not support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008); *see also Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment."). As such, although Plaintiff alleges that his health care problems would be solved by seeing a "licensed cardiologist," he has no constitutional right to a specific course of treatment.

Finally, Plaintiff admits to many additional health problems – some of which he takes medications for – which complicate the diagnosis and treatment of his symptoms. *See* ECF No. 1-5 at 18 ("Thoracic Outlet syndrome, 1999"), at 24 ("water pill (Hydrochlorathyazine)"); at 31 ("neck (disc fusion, metal)"); at 32 ("numbness on my [] head and neck … [which resulted in] a plate and 4 screws"); at 38 ("cholesterol pill"); ECF No. 7 at 1 (Gabapentin). Plaintiff also admits to "not [being] nice" and "cussing" to MCC medical personnel trying to diagnose his problems.

- 10 -

ECF No. 1-5 at 31. Plaintiff has also refused to take his prescribed medications at times, which only prolongs and discourages attempts at diagnosis of his medical problems. *Id.* at 37.

The Court is compassionate to the fact that it is frustrating when the source of a medical problem is unknown. However, the evidence demonstrates that defendants have treated Plaintiff's medical problems and attempted to determine the source of the problem. Nothing in Plaintiff's pleadings suggests an intentional disregard for Plaintiff's serious medical needs by any defendant.

b. **Fourteenth Amendment**

In addition to the Eighth Amendment, Plaintiff also alleges that all the defendants violated his Fourteenth Amendment rights. Under the Fourteenth Amendment's substantive due process, the State has an affirmative duty to protect a person when the State has put limitations on the person's personal liberty, like in the case of a prisoner. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). The Eighth Amendment and the Due Process Clause require that the State provide for a prisoner's basic human needs, including food, clothing, shelter, medical care, and reasonable safety. *Id.* at 200.

However, the Supreme Court has expressed its reluctance to expand the concept of substantive due process. *Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016). As such, when "a particular constitutional amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Greenman v. Jessen*, 787 F.3d 882, 890 (8th Cir. 2015). In this case, the Eighth Amendment is the guide for analyzing Plaintiff's claims and as stated above, Plaintiff fails to state an Eighth Amendment violation.

## II.     Official Capacity Claims

Plaintiff also brings his claims against all four defendants in their official capacities. However, a suit brought against an official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, an official-capacity suit generally represents a "way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

### a.  State of Missouri Defendants

In this case, defendants Myles Strid and Anne Precythe are MDOC employees. Naming a state official in his or her official capacity is the equivalent of naming the government entity that employs the official – the State itself. *Will*, 491 U.S. at 71. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71; *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983").

In addition, in the absence of a waiver, the Eleventh Amendment[5] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). Accordingly, Plaintiff's official-capacity claims for money damages are barred by the Eleventh Amendment and subject to dismissal. *Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official

---

[5] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

capacity is barred under the Eleventh Amendment."); *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983.").

For all of these reasons, Plaintiff's claims brought against defendants Strid and Precythe in their official capacities will be dismissed for failure to state a § 1983 claim for relief.

### b. Centurion Health Care Defendant

Defendant Laurel Raines is a Centurion Health employee. As such, Plaintiff's official capacity claim against defendant Raines is duplicative of Plaintiff's claim against Raines's employer, Centurion Health.

Defendant Centurion Health is the private corporation contracted to provide medical services to prisoners at MCC. In order to state a claim against a corporation like Centurion, Plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts an injury actionable under § 1983").

In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that a municipality or local governing body can be directly liable under § 1983. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

In this case, Plaintiff asserts that Centurion "drag[s] their feet when it comes to establishing a medical plan" when a medical need arises for a prisoner. ECF No. 1 at 6. Plaintiff also complains about a lack of communication by Centurion and he argues that "quality" health care requires a medical doctor on site and not just a nurse practitioner.[6] *Id.*

These conclusory allegations are not enough to state a *Monell* claim. Plaintiff does not identify a clear policy, custom or practice that caused his injuries. He does not name a specific Centurion policy that resulted in a denial of treatment, in violation of the Eighth Amendment, on a specific date or time period. Vague and conclusory allegations that his injuries were caused by some unidentified, unconstitutional policies are insufficient to state actionable *Monell* claims. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of a *Monell* claim where the plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of the plaintiff's rights); *see also Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (to plead an actionable *Monell* claim "[t]he description of a policy or custom and its relationship to the underlying constitutional violation...cannot be conclusory; it must contain specific facts.").

Furthermore, because Plaintiff fails to state a claim of a constitutional violation by employee Raines, any claim for § 1983 or *Monell* liability against Centurion also fails. *See Whitney v. City of St. Louis, Mo.*, 887 F.3d 857, 861 (8th Cir. 2018) ("[A]bsent a constitutional

---

[6] The Court notes that some of Plaintiff's allegations sound like they are an attempt to bring claims on behalf of other prisoners. However, a non-attorney, self-represented litigant (like Plaintiff) may not represent someone else in federal court. *See* 28 U.S.C. § 1654 (stating that in all United States courts, "the parties may plead and conduct their own cases personally or by counsel"); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (stating that "because *pro se* means to appear for one's self, a person may not appear on another's behalf in the other's cause. A person must be litigating an interest personal to him."); *Lewis v. Lenc–Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986) (stating that non-lawyers may only represent themselves because "an individual may appear in the federal courts only *pro se* or through counsel.").

violation by a city employee, there can be no § 1983 or Monell liability for the City"); *Malone v. Hinman*, 847 F.3d 949, 955-56 (8th Cir. 2017) (finding no § 1983 or *Monell* liability on the part of the city where no constitutional violation by the police officer employee); *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) (finding that without a constitutional violation by the individual officers, there could be no § 1983 or *Monell* municipal liability).

For all of these reasons, Plaintiff's pleadings fail to state a claim upon which relief can be granted against Centurion or defendant Raines in her official capacity.

### Conclusion

Undoubtedly, as Plaintiff is a prisoner of the State, he has a constitutional right to basic medical care. However, Plaintiff has no right dictate by whom he receives this care. The evidence before the Court shows that Plaintiff has received extensive medical care and testing for his medical problems. There is no indication that any defendant intentionally provided maltreatment or has refused to provide essential care to Plaintiff. Furthermore, Plaintiff's allegations fail to support that he suffered any constitutional violation as a result of a Centurion Health policy, custom, or failure to train. As such, this case will be dismissed for failure to state upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $108.67 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding. *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to any defendant because the complaint fails to state a claim upon which relief can be granted. Plaintiff's claims against defendants Laurel Raines, Myles Strid, Anne L. Precythe, and Centurion Health Care, Inc. are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FINALLY ORDERED** that Plaintiff's motions for appointment of counsel [ECF Nos. 3 & 8] are **DENIED as moot**.

A separate Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 24th day of October, 2023.

                                                           /s/ Henry Edward Autrey
                                                HENRY EDWARD AUTREY
                                            UNITED STATES DISTRICT JUDGE